1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF CALIFORNIA

3                    --o0o--

4    REGINO PRIMITIVO GOMEZ, et al, ) Case No. 1:10-cv-01163-LJO-MJS
                                    )
5                    Plaintiffs,    ) Fresno, California
                                    ) Friday, April 22, 2011
6         vs.                       ) 9:59 A.M.
                                    )
7    H & R GUNLUND RANCHES, INC.,   ) Hearing re:  motion for
                                    ) protective order and status
8                    Defendant.     ) conference.
     _____)

9

                    TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE MICHAEL J. SENG
                UNITED STATES MAGISTRATE JUDGE

11

     APPEARANCES:

12

     For Plaintiff:            FELICIA A. ESPINOSA
13                             BLANCA BANUELOS
                               Calif. Rural Legal Assistance
14                             2115 Kern Street, Suite 370
                               Fresno, CA   93710
15                             (559) 441-8721

16   For Defendant:            DANIEL J. CRAVENS
                               Littler Mendelson
17                             5200 North Palm Avenue, #302
                               Fresno, CA   93704
18                             (559) 244-7500

19   Court Recorder:           OTILIA FIGUEROA
                               U.S. District Court
20                             2500 Tulare Street, Suite 1501
                               Fresno, CA   93721
21                             (559) 499-5928

22   Transcription Service:    Petrilla Reporting &
                                 Transcription
23                             5002 - 61st Street
                               Sacramento, CA   95820
24                             (916) 455-3887

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1

1        FRESNO, CALIFORNIA, FRIDAY, APRIL 22, 2011, 9:59 A.M.

2

3          THE CLERK:  The Court calls Item No. 2, 1:10-cv-1163,

4    Regino Primitivo Gomez, et al v. H & R Gunlund Ranches, Inc.,

5    motion for protective order and status conference.

6          THE COURT:  May I have the appearances please?

7          MS. ESPINOSA:  Good morning, Your Honor.  Felicia

8    Espinosa for plaintiffs along with Blanca Banuelos.

9          THE COURT:  Okay.

10         MR. CRAVENS:  Good morning, Your Honor.  Daniel

11   Cravens on behalf of defendant.

12         THE COURT:  All right.  Welcome both.  Nice to see

13   you in the flesh after talking to you on the phone.

14         This matter is on for defendant's motion for a

15   protective order.  The Court was informally pre-briefed during

16   our telephonic discovery dispute conference the other day.  I

17   was made familiar with the issues.  I have since read the

18   notice of motion and motion, the plaintiff's opposition, the

19   reply to the opposition and all the accompanying papers and

20   exhibits.

21         I have reviewed the cases that were attached, and

22   some that were cited.  I reviewed the second amended complaint,

23   and I believe I'm going to begin by giving you my preliminary

24   action, and then invite argument, and when I say preliminary,

25   it really is preliminary.  If it was anything other than that,

2

1  I would have taken the matter under submission without oral

2  argument.  So don't feel that my mind is made up.  I really do

3  value what I hear out here in the courtroom.

4        But the issue, as I understand it is this is a wage

5  and hour case in which the plaintiffs seek under a variety of

6  causes of action, individual causes of action, and collective

7  causes of action, and I do appreciate the difference between

8  the various causes of action as spelled out in the moving

9  papers, that there have been wage and hour law violations by

10 the defendant with regard to -- and the facts set out claims

11 with regard to piece work workers involved in pruning and tying

12 vines.

13        The recent discovery efforts have undertaken to -- by

14 the -- excuse me, recent discovery efforts by the plaintiffs

15 have undertaken to explore into wage and hour situations of

16 other types of employees, namely, really, I guess, all of the

17 employees of the company, but focusing on hourly wage employees

18 as -- in addition to the piecework employees who had been the

19 primary subject of the case, at least to date.

20        Defendants object to that, and we have postponed a

21 deposition, or perhaps I believe more, actually, but postponed

22 scheduling additional ones until we could address this issue.

23        In no particular order of importance, there was much

24 discussion in the briefs about the significance of the PAGA

25 claim, and as to whether or not, given the nature of a PAGA

1  claim, the private attorney general act claims that have been

2  asserted in I think cause of action 13 if my memory serves me

3  correct.  That that is a much broader claim than set forth in

4  the original pleadings, because it relates to all aggrieved

5  individuals -- all individuals aggrieved by the acts of the

6  defendant and that, according to the plaintiff, extends to

7  anyone who has been aggrieved under -- because of violations of

8  the wage and hour laws.

9      The defense response is that -- well, no, that's not true

10  because the pleadings frame the complaint and we do have

11  noticed pleading, and the pleadings to date have been limited

12  exclusively to piecework workers, and there is no basis under

13  the pleadings to extend that, even under the PAGA claim, to

14  other types of employees.

15      I will tell you that preliminarily I am persuaded by

16  the defendant's argument, not because of a detailed analysis of

17  the PAGA, or the act, the private attorney general act, or the

18  legislative history, or anything else, but simply on a very

19  simple procedural analysis that the pleadings do set forth the

20  nature and scope of the claim.

21      The pleadings, as I read them, focus from a factual

22  standpoint and from a factual issue exclusively on the

23  piecework employees, and it would -- I believe the action is

24  defined and limited by the pleadings, which are limited to the

25  pruners and tiers, the piecework, the vine and almond tree

4

1    pruners and tiers who are piecework workers.

2         It just strikes me that it would be inappropriate,

3    and perhaps unfair to the defendant to broaden the scope to

4    include all aggrieved employees of all types at this late date,

5    at least without a motion to amend, having been filed and

6    granted.

7         Now, again, I'm looking at that from a purely

8    practical and -- standpoint and the standpoint of fairness.  It

9    just seems to me that included in the PAGA claim could not and

10   should not so open the issues ins this case, arguably, to take

11   it to an extreme, I mean, you could be -- all of a sudden you

12   could march into trial and have claims that the defendant

13   discriminated against workers based upon age, or sex, or

14   religion, or something like that, and I know you're not doing

15   that, but it just seems tome that it would open the door much

16   broader than it has been opened by the pleadings to date.

17        So I -- my preliminary ruling is the Private Attorney

18   General Act claim cause of action does not open the door to the

19   discovery that is sought by the plaintiffs.

20        The plaintiffs also claim, as I read the motion

21   papers, that -- well, some of these plaintiffs, individually

22   identified plaintiffs also worked hourly too, and therefore, we

23   should be able to inquire as to how the company treated them

24   from an hourly standpoint.

25        I have a question, and I'll hold your answer until

5

1    the end.  But when I -- I mean, until we give you a chance to

2    speak, but just make a note.  I do not see that the defendants

3    are denying discovery with regard to how the named plaintiffs

4    might have been paid, or if they were paid, or if they worked

5    on an hourly basis as well.  So that will be something I'll

6    need to have addressed.

7         Now, having said all that, we all know, anybody who's

8    litigated, particularly in this state, and in this court, that

9    discovery is very broad.  Basically, the door to discovery is

10   open to anything that might reasonably lead to the discovery of

11   admissible evidence or relevant evidence.

12        We're not looking here at relevance for the

13   standpoint of trial admissibility, but my inquiry is focused on

14   whether or not there is a reasonably basis to conclude that

15   discovery as sought by the plaintiffs might lead to relevant

16   and admissible evidence in this case.

17        In that regard, I have searched through the

18   pleadings, the arguments and identified a couple of areas in

19   which it seems that may be possible here, specifically with

20   regard to the allegation that the defendants violated

21   California Labor Code -- and I can't read my own writing, it's

22   either 226 or 221(e).  I apologize, but it is that provision

23   that provides for penalties for a knowing and intentional

24   violation.

25        There also is the issue of willfulness as creating an

6

1    extended statute of limitations under the Fair Labor Standards

2    Act, and there also is the argument that the defendants have

3    raised a defense of good faith.

4              Preliminarily it would seem to me that the discovery

5    that is sought could very well lead to evidence that would

6    support the claims, or refute the claims of knowing and

7    intentional violation, or willfulness.

8              For example, if the discovery revealed that the

9    company was showing that the -- the discovery showed that the

10   company had disregarded its obligations in this same respect

11   with regard to hourly workers, it could show, it could support

12   an argument that the company was totally disregarding all of

13   its obligations under the wage and hour laws.  That's just one

14   example, but it may be enough, and I would be inclined to think

15   that discovery into those issues, just discovery, I'm certainly

16   not talking about the disability, but discovery should be

17   permitted because it may very well lead to support for those

18   knowing and intentional claims, and the willfulness claims, and

19   the good faith argument.

20             So I'm going to invite each of you to address those

21   issues, and then my final issue will be -- I'm going to give

22   you a whole laundry list of things you can talk about, but I

23   also wanted to -- this is a balancing act, and I want to know

24   what harm would occur to the plaintiff if this motion were

25   granted, if the discovery was not allowed, and vice versa, what

7

1  harm would occur to the defendant.  Let's see if I've got it

2  backwards here, but basically I want to know what harm would

3  come to the defendant if I grant -- if I allowed the discovery,

4  denied the motion and allowed the discovery and what harm would

5  come to the plaintiff if I granted the motion and denied the

6  discovery.

7          Okay.  So everybody's got their laundry list.  And it

8  is the defendant's motion, so I will invite Mr. Cravens to

9  begin.

10          MR. CRAVENS:  Your Honor, I won't address the PAGA

11  issue unless you have specific questions for me.

12          THE COURT:  I do not.

13          MR. CRAVENS:  I'm just reserving the right maybe to

14  rebut anything that comes up --

15          THE COURT:  All right.

16          MR. CRAVENS:  -- in plaintiff's portion on that

17  because obviously I agree with the Court.

18          With respect to the relevance issue, the defense

19  doesn't disagree with the Court, and I -- we tried to make that

20  clear in our reply brief, but the question is not whether or

21  not the door is open to some discovery as it relates to

22  willfulness, and knowledge, and intentional and good faith,

23  although I -- on the good faith, I want to just drop a

24  footnote.

25          Affirmative defenses related to good faith

8

1    specifically say the defendant maintain good faith as to the

2    plaintiffs at all times.  So our position would be that the

3    affirmative defenses don't open the door any broader than

4    claims of the plaintiffs.

5         But leaving that aside, clearly, willfulness and

6    knowing and intentional conduct are issues that are appropriate

7    for discovery in this case.  We're not taking the position and

8    have never taken the position that discovery of those matters

9    is not permissible.  I -- as we point out in the reply brief,

10   there is nothing stopping plaintiff from just straight out

11   asking those questions, what did you do with the other folks?

12   Did you pay the hourly people?  Did you pay them on an hourly

13   rate?  Did you keep track of their hours?  You know, and then

14   if you did, why didn't you do it for the plaintiffs?  All of

15   that would be relevant.  All of that would be fine.

16        The issue -- and we don't -- we didn't bring this

17   motion to try to close the door that far, but plaintiffs have

18   signaled an intent to inquire into literally, like the question

19   that we -- that triggered this whole -- and gave notice to the

20   defense that this is the planned direction of plaintiffs was,

21   list all the employees you know who worked in the dehydrator, a

22   job function that no plaintiff in this case ever had.

23        How the identities of all of plaintiff's employees --

24   the defendant's employees, what relevance that has to the issue

25   of willfulness, the defense just doesn't see.  And there'd be

1  also -- there's other questions, I think that would be

2  similarly -- could fall in a similar category.  And the way

3  that the defense sees this is if the question is does PAGA or

4  just the relevancy issue that the Court raises, does that open

5  the door to ask any question that they want about any other

6  employee, and any other policy, and any other job function,

7  even though the employees really -- the plaintiffs were not

8  impacted by it at all, and we would say no.

9       What plaintiffs have given notice that they intend to

10  do is essentially to form an audit, both a paper audit, and

11  then an oral audit of all of the company's employment

12  procedures and practices.  Literally, all of the wage

13  statements of every single employee.  Literally, questions

14  about how if there are questions about those wage statements,

15  why was a, you know, deduction made on this person, or why, you

16  know, why were they paid in that way asking questions about all

17  of those things.

18       And I think that far exceeds the issue of willfulness

19  so that there's a small hook for discovery which the defendant

20  -- the defense does not challenge at all, which is that there

21  should be some discovery on the question of willfulness and

22  knowledge and intent, but that that doesn't open the door to

23  completely unlimited questioning about how every employee at

24  all times was treated by the defense.  We haven't been given

25  notice of that, and it's too late in the game for that.

1        So the question for the Court, and what's going to be
2   difficult as we go forward, is guidance on how we interpret
3   that and in other words, what's the scope of discovery here?
4   Clearly it involves some questions about willfulness.  I would
5   say, for example, there's no -- there's really very little that
6   the plaintiffs aren't going to be able to ask the corporate
7   representatives about what their policies are so that they can
8   compare various policies.

9        But when you want to start getting into the details,
10  well, give me all the wage statements, why did you do this with
11  this person and not with another person?  See, policies are at
12  10,000 feet.  Policies are, you know, what was the company
13  doing, what did the company know about employment law in
14  general, about its duty to record hours, for example, in
15  general?

16       Then there's the specific.  Well, let's talk about
17  this particular employee, this particular time, why did you pay
18  him that way?  Where did this employee work?  It's not a
19  plaintiff.  I don't think it has any place in this case.

20       THE COURT:  Let me ask you how -- it sounds like
21  under your proposal the plaintiffs would be relegated to
22  accepting whatever answer was provided, and would be relegated
23  to assuming that the policies, whatever they may be, were
24  actually carried out, wouldn't they be entitled to verify this
25  information independently through some sort of means of

1    discovery?  How do they know whether the policy as announced by

2    the corporate -- the higher-ups at the 10,000 foot level are

3    actually in place?  And that in and of itself could show either

4    a lack of willfulness that they follow their policies, or

5    perhaps willfulness that they did not.

6         So how did they -- I don't think they're totally

7    dependent upon accepting the deponent's word, or the corporate

8    response.  There has to be some means of verification.  How

9    would they verify it under your proposal?

10        MR. CRAVENS:  Well, obviously, this is not a

11   situation that's new to this Court or to this case, because at

12   some point you draw the line and say discovery becomes too

13   burdensome to one side or the other.  You've got enough proof.

14        In other words, and even at trial, you're not allowed

15   to put in front of the Court all -- and the jury all of the

16   evidence that maybe you've been able to ascertain.  And the

17   reason for that is there is significant prejudice to my client

18   for allowing unlimited discovery.  It's time consuming.  This

19   is a family farm.

20        I mean, this isn't a corporation with lots of

21   employees.  This is the person who does -- the corporate

22   representative is going to be Jerry Gunlund and he's the person

23   who does all of this.  They don't have any staff that -- they

24   don't have office staff, and he's going to be -- this is going

25   to be one individual farmer who's going through all of his

1   boxes.

2          Now, they do have a -- you know, they have an

3   accountant, so I guess that's, you know, it's just not on

4   staff, they hire an accountant, but -- and that also was

5   expensive, employing the accountant, and it takes a lot of his

6   time.  I mean, that's a significant burden.

7          And so then you -- I think the Court is obligated

8   under the discovery rules to weigh the burden to the defense

9   versus the possible benefit.  I mean, I think that there's some

10  way to craft -- I understand what the Court is saying, and I

11  think that there will be some way to craft a response.

12         But a -- what the defense would propose, first of

13  all, is that the Court provide some sort of guidance, which I

14  believe it did at the beginning, in its preliminary ruling,

15  some sort of guidance of what the Court thinks is within the

16  scope of discovery here, and what sort of discovery is not, and

17  so that we have principles to try to apply in good faith.  And

18  then if we have a dispute, we can call the Court up and resolve

19  that individual dispute.

20         But what the defense would ask the Court not to do is

21  just say, well, I really don't want to deal with that.  We

22  don't want to look individually at what the questions are.

23  Let's just say there's no prejudice to the defendant letting

24  the question be asked.

25         So if they take all of the depositions, I think in

1    this case, at least all of the principal depositions are going

2    to be over in two weeks.  If at that time the plaintiffs have

3    asked the questions that they need to ask, and they've gotten

4    answers, and they think, well, we need to test that in some way

5    to see if there's a credibility issue, and they want some

6    additional discovery, then we can talk about it, and meet and

7    confer in good faith applying the principles that the Court has

8    outlined.

9         And if we have a dispute then perhaps informally call

10   up the Court and just say, what's your ruling on that, as

11   opposed to just an absolute hunting license, and when one talks

12   about -- there are lots of cases that talk about fishing

13   expeditions, but there is, obviously, some prejudice to the

14   plaintiff of having every employee out there, everything

15   exposed in the public record, and if the -- if another lawsuit

16   is filed, the defendant will have to deal with that lawsuit.

17        But this lawsuit has been filed, it's been framed the

18   way it's framed.  That provides the limits of discovery and the

19   possibility that maybe somebody else was paid inappropriately.

20   Maybe that's true, maybe that's not true, but that's not a

21   justification for putting the defendant to the cost and the

22   trouble.

23        THE COURT:  By the way, you -- I think you said some

24   cost to the plaintiff of having to do that.  I understood you

25   misspoke though.

14

1          MR. CRAVENS:  I meant defendant.  I thank you for

2     clarifying that.

3          THE COURT:  All right.  Thank you very much.

4          Ms. Espinosa?

5          MS. ESPINOSA:  Your Honor, I guess I'll begin with

6     the willfulness, again, no particular order, just because we

7     began there.

8          This discovery dispute began when plaintiffs were

9     deposing Manuel Serna (phonetic).  Mr. Serna was the only

10    foreman for Gunlund for over 20 years.  I think what's

11    important, and even when it comes to him, plaintiffs should be

12    able just to ask, because it's an employment case, just be able

13    to ask, how'd you work for Gunlund, how many years, what areas

14    did you work in, who did you supervise?

15         These are normal questions in an employment law

16    matter when you're deposing a former employee of the defendant

17    who's the employer.  That line of questioning as to Manuel

18    Serna, his duties, his pay practices is actually no burden to

19    defendant because he no longer works for the defendant, neither

20    is -- are we asking any papers from the defendant when we talk

21    to Mr. Serna.  Again, these are common questions in employment

22    law -- in employment law matters.

23         As to the willfulness standard, as Mr. -- defendant

24    points out, the good faith defense was numerous.  There wasn't

25    just one time.  The good faith defense is as to -- they claim

15

1  to have reasonable conduct as to what they did, good faith, no

2  intent, no deceptive means, and he says that it's as to

3  plaintiff at all times.  Where there's substantial evidence in

4  front of the Court showing that plaintiffs worked in other

5  areas besides piece rate.  They worked in the almond trees.

6  They worked in the dehydrator.  There's a declaration in

7  plaintiff's opposition.

8         THE COURT:  Well, let me ask you, that's one thing we

9  didn't address.  Does the defendant object, and I don't want to

10  put you on the spot, but it would be helpful if you'd give us

11  an answer.  Does the defendant object to providing information

12  as to named plaintiffs with regard to their work in other

13  areas, and the hours and wages they ere paid?

14         MR. CRAVENS:  Well, the defendant has already, I

15  believe, produced all of the pay records that effect the

16  plaintiffs, but subject to check.  I think we have -- we

17  certainly don't have any objection to providing documents

18  relating to plaintiffs only.

19         THE COURT:  So I don't think that's an issue.  Just

20  talking about the plaintiffs, I don't see a dispute there.

21         MR. CRAVENS:  But where the dispute would be, Your

22  Honor, is that we wouldn't say, for example, because a

23  plaintiff may have worked some hours in pruning almond trees,

24  that somehow that exposes the company to discovery as to all

25  employees that did almond pruning.

1          THE COURT:  Right.

2          MR. CRAVENS:  We're talking about discovery as to

3   plaintiffs --

4          THE COURT:  Right.

5          MR. CRAVENS:  -- we have no objection to that

6   whatsoever.

7          THE COURT:  Right.  And I -- so I --

8          MS. ESPINOSA:  Okay.

9          THE COURT:  So I don't think that --

10         MS. ESPINOSA:  I think that I'm addressing the

11   defendant's reply in that he says that there's no evidence in

12   front of the Court showing that named plaintiffs worked, for

13   example, in the dehydrator.  And so Exhibit 5, it was a named

14   plaintiff claimed that he worked in the dehydrator.  So we have

15   everybody working in all agricultural.  So I was just

16   addressing that issue.

17         I think that what -- as to -- there's been no

18   testimony a to 226(e), but even for the wage statements as to

19   226(e) and to determine the damages, as the Court has stated,

20   it is relevant as to the named plaintiffs.

21         Additionally, the relevancy as to other violations

22   when it comes to good faith, the other violations show that

23   intent, the motive, basically the defendant's dealings when it

24   comes to agricultural workers.  This is -- it might be run by a

25   family, but this isn't a family farm that employs over 100

1    employees on a yearly basis.  They have rotating employees.

2    During the piece rate pruning season, they have up to 80

3    employees.  This is not a mom and pop shop and these violations

4    are occurring on a workforce-wide relief.  As such, this shows

5    pattern, and it shows motive, and the lack of good faith and

6    reasonable conduct.

7           I guess we can -- and as to PAGA -- but to begin with

8    PAGA, the first issue I want to address is the notice.  When it

9    comes to the PAGA notice, the only thing the Court has to look

10   at is section -- Labor Code Section 2699.3.  In Labor Code

11   Section 2699.3 the Labor Work Force Development Act, and the

12   defendant just has to know about the alleged labor code

13   violations and those employees which suffered those violations

14   and the facts leading to said violation.

15          THE COURT:  Let me direct you, if you would, to my

16   concern that at this late stage of the proceedings, the issues

17   have been framed, the discovery has been framed and I

18   certainly, you can tell from my comments, I agree with the

19   defense that this potentially could be seen as an effort to

20   open up this case in a much broader way than it was originally

21   framed.

22          And so I'm focusing not so much on the fine elements

23   and specifics of the act, but on just fundamental fairness and

24   notice.  And I would just tell you that I would be very

25   surprised if any of the trial judges would let you pursue a

18

1   claim for those other workers at this time in this case.  I may

2   be wrong, but I'm just -- that's really my concern about saying

3   that PAGA opens the door.  It just -- it strikes me as unfair.

4          MS. ESPINOSA:  Okay.  Well, Your Honor, as to the

5   fairness issue, we also have to look at the fact that

6   plaintiffs are representative of aggrieving pleas within a

7   year.  So that it is any, but as to those 10 to 13 violations,

8   it is a year of the other aggrieved employees.  Let's look at

9   the fairness as to those precluded from ever bringing civil

10  penalties, bringing a PAGA cause of action because we've been

11  un -- because the Court is unwilling to extend past piece rate,

12  pruning and tying.  It's the other eight months that also -- of

13  employees.

14          THE COURT:  I believe I saw something in defendant's

15  papers that say we're not claiming a collateral estoppel effect

16  as to those other employees.

17          MS. ESPINOSA:  It has a collateral estoppel -- based

18  on Arias (phonetic), based on the controlling case which the

19  Eastern District has cited as being the controlling case in the

20  Eastern District Federal Court, it has collateral estoppel

21  effect as to the whole year of aggrieved employees with assumed

22  labor code violations.

23          THE COURT:  Well, can defendant waive that collateral

24  estoppel effect?

25          MS. ESPINOSA:  To be honest, that's undecided, and I

19

1   don't know if I'm willing to waive that.  I mean, that's

2   undecided law, if we can waive it for aggrieved employees.

3           THE COURT:  All right.

4       (Pause - counsel conferring.)

5           MS. ESPINOSA:  I mean, I don't know if you want me to

6   cite the Arias case, and put it on the record, exactly what it

7   says, but --

8           THE COURT:  If you feel it's important to your case,

9   you should do that.

10          MS. ESPINOSA:  Okay.  Based on Arias, the

11  page -- what is it --

12          THE COURT:  I did read it, anyway --

13          MS. ESPINOSA:  Okay.  Sorry.  "If the employer had

14  prevailed, however, the non-party employees, because they were

15  not given notice of action, or afforded any opportunity to be

16  heard, would not be bound by the judgment as to the remedies,

17  other than civil penalties."

18          So they would be bound as to the civil penalties with

19  this case, and that's what a PAGA action is.  It's not any

20  damages as to the actual labor code violations, it's only as to

21  civil penalties for the Labor Work Force Development Act, 75

22  percent there, 25 percent to the aggrieved employees.

23          So it is a preclusive effect for a whole year, and

24  that's based on case law.  Defendants, by saying that it can be

25  cited to four months, cites no case law that says that it would

1   have that preclusive effect only.

2          And like Your Honor says, that when it comes to FRCP

3   26, we don't just look to the complaint.  You're right that the

4   complaint does have a lot of allegations as to piece rate work,

5   but that we do look at the good faith affirmative actions, and

6   we look as to the discovery already given.  So there are

7   violations as to the almond trees -- just the almond trees,

8   which is all that we've been given so far.  On the exhibit you

9   say that they tally up overtime and do not pay the hourly

10  employees daily overtime, and that's as to main plaintiffs as

11  well.

12         That is relevant to show that it's a common practice

13  of underpaying agricultural employees, and it goes to the

14  willfulness and the intentional standard which then extends the

15  specific cause of action to three years and you're entitled to

16  liquidated damages as well because the willfulness standard is

17  so huge, since it has such a big effect, and that you can get

18  double the wages, and extend it another year, it's important

19  that we can show this to the jury, or show this to Your Honor

20  that this is a common scheme, and a common practice.  Not on a

21  family farm, but on a farm that employs hundreds of workers on

22  a yearly basis.

23         THE COURT:  Let me ask you this.  What about

24  the -- what's been characterized as the burden to which

25  defendant would be exposed if the door were fully opened, and

1   you were allowed to request and obtain all the records with

2   regard to all the employees.  My -- well, I don't know, but I'm

3   wondering if your organization is situated that it could cover

4   the cost of that if that became the issue.

5           MS. ESPINOSA:  First, no, my nonprofit is not

6   situated to cover the cost.  Second, as to the -- PAGA only has

7   to do this one year, so we're not asking as to every employee,

8   and Your Honor raised the concern as to -- at the trial saying,

9   well, there's been racial discrimination, there's been age

10  discrimination.

11          PAGA's limited to the labor code violations that

12  we've asserted.  So all we can look into based on the PAGA

13  notice is the unpaid minimum wage, unpaid overtime, the

14  prohibiting meal and rest breaks, the inability to pay for

15  tools, and the plaintiffs had to bring their own tools.

16          THE COURT:  How do you propose to look into that?

17          MS. ESPINOSA:  Well, since I was -- with the

18  questions brought to the defendant, also wage statements.  If

19  you have one statement as to how they paid, for example, their

20  hourly workers, based on one wage statement you can just assume

21  circumstantially that it's the same wage statement that all

22  people worked in the dehydrator hat.  So you can base it on

23  that wage statement that obviously the other 20 people also

24  were given inadequate wage statements.

25          If you look at, for example, one person -- you --

22

1    that one person can say they were not paid overtime, you can

2    circumstantially assume that the other one -- I don't think

3    that that's that much of a burden especially given the fact

4    that when it comes to PAGA you don't have to do individual

5    damages.  It has to do with civil penalties.

6            So if we look, for example, at one employee that was

7    not given inadequate wage statement, then we have the remedy as

8    to that, and so the other 20 people who worked there.  We don't

9    have to individually look to each one.

10           THE COURT:  All right.  Do you not have the wage

11   statements for the individual named plaintiffs who worked in

12   other areas on an hourly wage basis?

13           MS. ESPINOSA:  No, we do not.

14           THE COURT:  I -- did I misunderstand?  I thought

15   those --

16           MR. CRAVENS:  No, well, I think that they do, but I

17   can't say for certain, so -- and there are a variety of

18   different kinds of documents, so maybe they don't have all of

19   the documents.  But what I did say is I -- we produced

20   everything that was requested.  That I'm confident in.  But we

21   don't object to them requesting documents with relationship to

22   the plaintiffs.  So if they haven't requested it and they do,

23   we'll produce it.

24           THE COURT:  All right.  Let me -- I don't want to

25   take off my judge hat and put on a mediator hat, but it seems

1    to me we're getting close to what may be at least an interim

2    approach, which would be to allow the plaintiff to question the

3    employee -- the employer representative, including specifically

4    Mr. Serna, was that his name?

5              MS. ESPINOSA:  He's a former foreman --

6              THE COURT:  Right.

7              MS. ESPINOSA:  -- but he's not, you know --

8              THE COURT:  With regard to these areas, they would be

9    entitled to look at the wage statements of the named plaintiffs

10   even if in other areas, but at this point, I do not see a basis

11   for allowing the plaintiff to go further, and I would be

12   concerned if there were some -- if I were persuaded that they

13   go further, I would be concerned about the expense on the

14   defendant and what does at least have a slight aroma of a

15   fishing expedition for another suit.

16             So I just want to balance it out.  The plaintiff's

17   entitled to proceed in certain ways, and they may, indeed have

18   another suit.  But just balancing out, I don't -- I'm

19   disinclined to impose a burden on the defense to support that.

20   I -- so, is there any chance we have the outlines of an

21   agreement that we could stipulate to here with regard to

22   further discovery in this regard as just outlined by me?

23   Anybody?  Kind of smiling, so I'm hoping.

24             MS. ESPINOSA:  I think that that is a fair agreement

25   in that we can ask as to the named plaintiffs documents,

24

1  questions as to named plaintiffs, how did you pay -- I'm

2  assuming that that is also as well.  I think the most issues is

3  the first deposition that we have on calendar is Mr. Serna.

4  The questions, I think, in general, and we can ask him, how

5  were you paid, I'm taking it before the Court, what did you

6  speak -- questions you've had with the defendant in the last 20

7  years, I think hinges as to personal knowledge, and foundation

8  and testimony evidence we should be able to ask as to his pay

9  practices, or any issues that he might have had or not had with

10  the defendant, just during the deposition.

11          THE COURT:  That's correct.

12          MR. CRAVENS:  Well, Your Honor, and in terms of

13  that -- the stipulation that you outlined that -- in terms of

14  the stipulation that you outlined, the defense would find that

15  agreeable.  However, I would not agree with plaintiff's

16  representation here.  Mr. Serna is another employee, precisely

17  one of these other employees that Your Honor just outlined you

18  wouldn't allow discovery into.  So in terms of how he was paid

19  for the last 20 years, he's not a plaintiff.  He's not someone

20  who would be in any way represented in this action.

21          Also in terms of general background questions, we

22  also -- we tried to make that clear in our brief.  We're

23  not -- general questions about what does this farm do, we don't

24  have an objection to.  Where in the deposition where I raised

25  an objection was, now tell me everybody you employed, and I

1  don't think it's a typical question in -- typically allowed in

2  an employment setting to get a list of all employees who ever

3  worked for a company, and that's what they're trying to do by

4  asking Mr. Serna to list all of the employees that you ever

5  supervised.  That's discovery into other plaintiffs.

6          THE COURT:  Okay.

7          MR. CRAVENS:  As opposed to saying, you know, general

8  background questions about, geez, what happens in the

9  dehydrator?  What's a dehydrator?  What's the process for

10 drying raisins?  That sort of thing we don't have an objection

11 to.

12         THE COURT:  All right.

13         MS. ESPINOSA:  Well, Your Honor, I was going to make

14 one thing as to Mr. Serna.  I think his case -- the way that

15 the defendants paid Mr. Serna is relevant as to -- especially

16 piece rate workers, because he was a foreman for all of

17 plaintiffs during piece rate work, and they paid him hourly,

18 and they kept track of his hours.

19         THE COURT:  All right.  Is there any reason to

20 believe Mr. Serna will not be available at trial?

21         MS. ESPINOSA:  Not that we know of.

22         THE COURT:  All right.  I tell you, I agree with the

23 defendant, I do not see why you would need to inquire as to how

24 Mr. Serna himself was paid over the years.  He's in a different

25 position.  I just don't see it?

1          MS. ESPINOSA:  Not even during the piece rate work?

2          THE COURT:  I don't see it.  He's not a plaintiff?

3          MS. ESPINOSA:  No.

4          THE COURT:  Okay.  I don't see it.  I believe you

5     could inquire as to the employer's practices with regard to

6     paying them, and you could inquire into the employer's

7     practices with regard to paying other employees to see if there

8     is a pattern of willfulness or disregard.  But -- and you may

9     inquire as to the actual pay of your plaintiffs, named

10    plaintiffs in other functions, and other positions in the

11    company.

12          But it will be the order of the Court that you not

13    inquire of any officers or other representatives of the company

14    at this time as to the specific pay to an individual, or

15    request the specific records, payroll records relating to a

16    specific individual other than the plaintiffs.  Okay?

17          MS. ESPINOSA:  Yes, Your Honor.

18          THE COURT:  So the deposition of Mr. Serna can go

19    forward.  I believe it's set for Monday; is that correct?

20          MR. CRAVENS:  No, Mr. Serna's deposition is set for

21    Saturday, April 30th.

22          THE COURT:  Okay.  All right.  It may go forward

23    within those limitations.  Do I need to spell them out any

24    better?  We --

25          MS. ESPINOSA:  Just to one -- as to -- I know we

1    cannot ask it.  We can ask for documents as to our named

2    plaintiffs.

3            THE COURT:  Yes.

4            MS. ESPINOSA:  We're not going to have documents as

5    to other employees.  Can we ask general questions such as how

6    did you pay during the almond trees?  How did you pay -- which

7    technically encompasses other employees.

8            THE COURT:  As long as I think it's a collective

9    question --

10           MS. ESPINOSA:  Okay.

11           THE COURT:  -- and does not focus on individual

12   employees, or ask for specific identification with regard to

13   individual employees.  You can inquire as to company practices

14   and patterns.

15           MS. ESPINOSA:  Okay.  And then my second question is,

16   we haven't addressed the issue as to opt-ins.  I don't know

17   whether the Court is going to take that into consideration.

18   But the FERTA (phonetic) cause of action does include I believe

19   51 opt-ins at this time and the collective action is closed.  I

20   don't know if it's the same, since they are named opt-ins,

21   which the defendant has the name of every single opt-in and so

22   does the Court, whether it's the same theory as to the named

23   plaintiffs including the opt-ins.

24           MR. CRAVENS:  Your Honor, the opt-ins only

25   participate in this action with respect to the FLSA collective

1    action.  That's it.  The FLSA collective action is expressly,

2    clearly, definitively limited to pruners and tiers.  So I don't

3    think there's an issue that the -- all of the opt-ins have a

4    pruner and tier case, and a pruner and tier case only.  So I

5    think opt-ins, the presence of opt-ins doesn't expand discovery

6    one wit.

7              THE COURT:  I agree.

8              MS. ESPINOSA:  So, but as to the piece rate pruning

9    and tying frame, we can talk about opt-ins is what we're saying

10   because --

11             THE COURT:  Yes.

12             MS. ESPINOSA:  Okay.

13             THE COURT:  Yeah.  Okay.  Do we have a sense of

14   direction?

15             MS. ESPINOSA:  I do, Your Honor, and that's --

16             THE COURT:  All right.  That doesn't mean you have to

17   agree with it, but that will be the sense of direction.  If

18   further disputes arise, and you need to have some further input

19   from the Court I will make myself available.  I don't want the

20   phone to ring with every question and answer that is given.  So

21   you folks try to work it out, but -- and if something changes,

22   to change the character of the claims, or to change the reasons

23   for the discovery, the Court makes this ruling without

24   prejudice to changed circumstances, generating another ruling.

25             Okay.  All right.  Mr. Corea (phonetic, is there

29

1    anything else we need to do, you think, at this point, to make

2    sure we can --

3         (Court speaking to clerk.)

4              THE COURT:  All right.  I will get a minute order out

5    adopting what we've discussed here today.  It will be very

6    brief though.

7              MS. ESPINOSA:  Yes, Your Honor.

8              THE COURT:  Thank you both very much.  It was very

9    helpful.

10             MR. CRAVENS:  Your Honor, there's also a status

11   conference set for today.

12             THE COURT:  Yes, you -- yes, there was some inquiry

13   as to whether we could explore the status and discuss the

14   possibility of settlement conference; is that true?

15             MR. CRAVENS:  Yes.

16             THE COURT:  And are both parties interested in having

17   a settlement conference at this time?

18             MS. ESPINOSA:  Not -- I mean, at this time, I guess

19   we have to talk about what this time means, but we are

20   interested in settling, yes.

21             THE COURT:  All right.  And at what time do you think

22   both parties -- let me see -- what time would both parties

23   agree on as a reasonable time to conduct a settlement

24   conference?

25             MS. ESPINOSA:  Well, plaintiffs believe that not

1    with -- before mid-July.  We haven't gotten any records, or

2    haven't asked either for any records as to the Austins, and

3    since the Austins are for their damages as to piece rate work,

4    we need time in order to get those records and to review them,

5    and come to damages as to that collective action.

6              THE COURT:  Okay.  Well, and I -- and we don't force

7    people to go to settlement conference if they don't want to,

8    but I'm just wondering -- it sounds like there will be some

9    expense and time incurred on behalf of you folks, and doing

10   that, is there any way you can extrapolate from what you have

11   now and find it in your interest to discuss a settlement sooner

12   rather than later?

13             MR. CRAVENS:  And Your Honor, one possibility, I

14   would just like to throw this out there, the defense's

15   position, we'd like to see it happen now, now that we have

16   ascertained the opt-in class, we would like to see a settlement

17   conference proceed within the next month.  Clearly, plaintiffs

18   need to have the corporate representative depositions that are

19   going to happen in the next weeks that's understood.

20             We would be willing to expedite the payroll

21   information for the opt-ins in some way that the -- to

22   facilitate that and make that process happen.  And I would also

23   throw out there that it's the -- or we have a possibility of

24   going to a settlement conference with a judge soon, and

25   hopefully we can get the matter settled before we go to

1   significant additional expense.

2          And then, if we can't resolve there, for some reason,

3   and we need to have a settlement, private mediation later in

4   the summer, then there's the possibility of doing that as well.

5   So --

6          THE COURT:  All right.  Why don't we do this:  why

7   don't the two of you communicate about getting the information,

8   and if you can get it to them sooner, and if you folks can

9   review it sooner, rather than later, I think it's probably in

10  everybody's interest, I mean for selfish reasons, the sooner

11  you negotiate a settlement, if one can be negotiated, there

12  will be less money having been spent on a litigation that can

13  maybe go toward the settlement from both sides.

14         So I would just encourage you to do that.  As I said,

15  I'm not going to force anybody to go to a settlement

16  conference, but I do believe it's in everybody's interest,

17  almost in every single case to do it, and to do it sooner

18  rather than later.

19         We know -- everybody knows that almost all cases

20  settle, like 98 percent in this court.  So unless you're in

21  that very, very small minority of two percent, this case more

22  than likely not will settle, and the earlier is always the

23  better for both sides in my experience.

24         So I encourage you to do that.  If you get to that

25  point and can both agree that a settlement conference is

1   appropriate, just let us know.  You will have to give some

2   thought as to whether or not you want me or one of the other

3   judges to do it, and whatever you decide in that respect is

4   fine with me.  If you want somebody that's not involved in the

5   case to look at it, a fresh set -- that's -- it won't hurt my

6   feelings.  But I'm more than happy to help out if I can.

7   So --

8           MR. CRAVENS:  Your Honor, with respect to whether or

9   not it would be you, do you -- what is your practice in doing

10  settlement conferences?  Do you spend an afternoon, or --

11          THE COURT:  Or longer if necessary.

12          MR. CRAVENS:  Or longer.

13          THE COURT:  Yes, yes.  I consider a settlement

14  conference a challenge, and if we don't settle, it means I

15  failed the challenge, and I don't like to fail, so I do like to

16  work with them up to a point where it doesn't seem like it's

17  going to be productive.

18          But I'm also mindful of the fact that nothing ever

19  seems to happen until that last 30 minutes anyway.  So I would

20  probably set it for a half day, and then we'd see what happens.

21          MR. CRAVENS:  This is a case that the defense

22  believes can settle.  It understands it has some issues in this

23  case, and wouldn't be going to a settlement conference thinking

24  that it didn't have any issues in the case, and it's -- it

25  being -- the defendant, my client, believes that with active

33

1  and energetic involvement of the Court that settlement could be

2  achieved.

3       THE COURT:  Well, and I do believe that is the role

4  of the Court in said situations.  So, I'm open to it, and you

5  know, you -- there may be some judges that are better, or

6  worse, and you feel free to shop around.  If you go to private

7  mediation, I'd be glad to recommend some, but it's entirely up

8  to you folks.

9       MR. CRAVENS:  Thank you, Your Honor.

10      MS. ESPINOSA:  Thank you, Your Honor.

11      THE COURT:  And you won't hurt my feelings if you

12  choose somebody else.

13      THE COURT:  All right.

14      MS. ESPINOSA:  Thank you.

15      THE COURT:  Anything else?

16      MR. CRAVENS:  I would like a copy of the transcript.

17      THE COURT:  We will have to order that.  Anything

18  further on behalf of the plaintiffs?

19      MS. ESPINOSA:  No, Your Honor.  Thank you.

20      THE COURT:  Okay.  Thank you all for your

21  cooperation.

22    (Whereupon the hearing in the above-entitled matter was

23  adjourned at 10:46 a.m.)

24                     --o0o--

25

34

1                             <u>CERTIFICATE</u>

2       I certify that the foregoing is a correct transcript from

3   the electronic sound recording of the proceedings in the above-

4   entitled matter.

5

6   _____        April 29, 2011

7   Patricia A. Petrilla, Transcriber

8   AAERT CERT*D-113

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25