IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINO PRIMITIVO GOMEZ, et al., | CASE NO. CV F 10-1163 LJO MJS |
| Plaintiffs, | **ORDER APPROVING FLSA CLASS SETTLEMENT AND ENTRY OF FINAL JUDGMENT** |
| vs. | |
| H & R GUNLUND RANCHES, INC., | |
| Defendant. | |

## INTRODUCTION

The parties move for a final approval of class action settlement and attorneys' fees. Pursuant to this Court's October 7, 2011Order to Set Final Approval of Settlement and Fees Hearing ("Hearing Order"), this Court conducted a fairness hearing on November 15, 2011 in Courtroom 4 (LJO). Plaintiffs appeared by Felicia A. Espinosa and Michael L. Meuter, California Rural Legal Assistance, Inc. ("CRLA") and Mark Talamantes, Talamantes/Villegas/Carrera, LLP. Defendant H. & R. Gunland Ranches, Inc. ("Gunland") appeared by Jason H. Borchers, Litter Mendelson. No one appeared to object to the proposed settlement, and no oppositions were received before or after the November 8, 2011 deadline.

To determine whether this FLSA class settlement fundamentally is fair, adequate and reasonable, this Court considered the proposed settlement agreement between the parties, the relative strengths of the Plaintiffs' claims, the risks and expense involved in continuing litigation, the proposed expense for

settlement administration, and attorneys' fees, among other things.  This Court further considered the parties' arguments at the November 15, 2011 hearing, supplemental briefing, and the unopposed motion. For the reasons stated on the record and set forth below, this Court APPROVES the settlement, as ordered below.

### BACKGROUND

Gunland grows grapes on its farms in Fresno County near the town of Carruthers. Gunlund uses "piece work" to prune and tie its grape vines each winter. In piece work, one employee works one row. After the employee completes pruning and tying an entire row, he or she signs a row card and returns it to the company which uses it to calculate the employees compensation for that work week. The 31 named plaintiffs worked for Gunlund during various grapevine pruning seasons.

In their second amended complaint ("SAC"), Plaintiffs allege that they were paid at piece rate wages, which is based on the amount of vines tied and/or vines pruned, regardless of the numbers of hours worked, and regardless of minimum wage. The SAC asserts twelve causes of action against Gunland, including state and federal claims. In their tenth cause of action, Plaintiffs alleged that they, and others similarly situated, worked regularly in excess of ten hours per day and sixty hours per week pruning and tying vines, but were not paid minimum wage as required by the Fair Labor Standards Act ("FLSA"). In a December 16, 2010 order ("Certification Order"), this Court granted conditional class certification as to Plaintiffs' federal FLSA claim only, based on the alleged unlawful action of failure to pay federally-mandated minimum wages. The class was certified as follows: "All current and former employees of Defendant H&R Gunlund Ranches, Inc. who have performed the work of pruning and tying grape vines from at least May 22, 2006 through the present."

The Court's Certification Order approved a notice to be issued to the putative FLSA class and included a time period in which putative class members had to opt in to the class action. At the end of the opt-in period, 51 additional plaintiffs filed their content-to-sue forms. The 31 named plaintiffs and 51 opt-in plaintiffs make up the 82 members of the settlement class ("Settlement Class").

### Procedural History

Gunland removed this action to this Court on June 25, 2010. Plaintiffs filed their first amended complaint on August 31, 2010. Gunland filed an answer to the first amended complaint on September

17, 2010.

Plaintiffs moved for conditional certification of their tenth cause of action on November 9, 2010. After the parties fully briefed the issues, this Court issued its Certification Order on December 16, 2010.

Pursuant to stipulation, Plaintiffs filed a second amended complaint on January 21, 2011. Gunland answered the second amended complaint on February 1, 2011. Between February and April 2011, the opt-in plaintiffs individually filed their consents to sue under the FLSA.

The parties had limited discovery disputes. Gunland sought a protective order and an order to limit discovery. Plaintiffs opposed these motions.

After the court resolved these issues, the parties sought a stay of all discovery deadlines, with a few exceptions, to allow the parties to prepare for a scheduled settlement conference. The parties participated in a one-day settlement conference on July 12, 2011. The case did not settled that time.

On August 8, 2011, Plaintiffs moved to amend the complaint a third time. Plaintiffs later withdrew that motion. Shortly thereafter, the parties gave telephonic notice to this Court that the parties had settled this action. Pursuant to this notice, this Court issued its Hearing Order to set a final fairness hearing and a hearing on attorneys fees.

Plaintiffs filed the motion to approve settlement and permanent injunction on November 1, 2011. That motion was unopposed. This Court conducted the fairness hearing on November 15, 2011.

**Settlement Agreement**

The relevant terms of the settlement agreement are as follows:

*Terms*

The Settlement Agreement applies to the Settlement Class, who are former and current farm workers who at any point from May 22, 2006 to present were employed by Gunlund, including H & R Gunland Ranches, LP and GR Partnership, Russell Gunland, Lance Gunland, and Gere Gunland.

The total settlement amount is $915,000.000.

Not less than $490,000.00 has been allocated to pay class members for their individual claims. Gunland shall pay the employer share of any payroll taxes owed to Class Members. Of this amount, $137,2000.00, or 24%, has been allocated to the settlement of claims for interest, penalties, liquidated damages, reimbursement of equipment and restitution. These allocations are based on the damage

projections provided by Plaintiffs' audit of the records and on the Parties' good faith assessment of the aggregate value of unpaid wages versus other damages sought by Plaintiffs. Because of the lack of payroll records and the passage of time, the parties represent that it is not feasible to make allocations on an individualized basis. The parties seek to distribute allocations in the aggregate.

*Claim Administration*

CRLA, its counsel and staff have serves as the claim administrator of this action during the Court-ordered FLSA notice phase. CLRA has agreed to administer the settlement distribution and coordinate with the members of the Settlement class. The cost of the final portion of claims administration, which includes locating the FLSA class, calculating the totals owed to each member, and distributing the checks, is not expected to exceed an additional $10,000.00. This estimated has been folded into the stipulated fee recovery request for counsel with the CRLA.

*Attorneys Fees and Expenses*

The parties have agreed that $416,615.92 should be awarded out of the total settlement amount of $915,000.00 to pay for attorneys' fees incurred in litigating this matter. The parties further stipulate to an award of costs and expenses in the amount of $8,384.08.

*Residue*

Class counsel believes that all funds committed to the FLSA lass will be distributed. The settlement agreement does not anticipate a residue that needs to be paid to a cy pres beneficiary. In the event that a class member does not cash a settlement check within 180 days of issuance, Plaintiffs will advise defense counsel of the amount of the uncashed checks. At that point, the residual funds from the uncashed checks will be equally distributed (50% each) to the following two charities: (1) St. Jude's Children's Research Hospital and (2) Central California Legal Services.

*Injunctive Relief*

As a term of the settlement agreement, Gunland agrees to a stipulated injunction which shall expire three years from the date of approval of this settlement. The stipulated injunction requires Gunland to comply with California wage and hour provisions and provides a mechanism for the Plaintiffs to monitor compliance with those labor laws.

///

### STANDARD OF REVIEW

"The court must approve any settlement...of the claims...of a certified class." Fed. R. Civ. P. 23(e)(1)(A). A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). This approval is required to ensure that the settlement is consistent with plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).

The determination of whether a class settlement is fundamentally fair, adequate and reasonable requires:

> a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). This list is non-exhaustive, and the Court may weight different factors depending on the circumstances of the case. *Id.*

### DISCUSSION

The Court shall consider the fairness, adequacy, and reasonableness of the proposed settlement pursuant to the aforementioned factors.

**Strength of Plaintiffs' Case**

This Court has not addressed the strengths of plaintiffs' case by way of motion, as no motions to dismiss or summary judgment motions have been filed in this action. The record demonstrates that the parties have exchanged informal discovery, and Gunland provided Class Counsel with over one thousand documents related to the claims asserted on behalf of the FLSA class. These documents include payroll records and wage statements of putative class members. Based on investigation and evaluation, independent of each other, Plaintiffs calculated that Gunland's unpaid wage and meal break exposure was a total of $1,142,398.00. Based on this calculation, a settlement agreement in the amount of $915,000.00 reflects the strength of Plaintiffs' claims. Accordingly, this factor favors approval of the settlement agreement.

### Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor strongly favors final approval of the class action settlement. This action is in its preliminary procedural stages. Discovery deadlines remain open. In addition, this action has focused on the one federal claim asserted. Plaintiffs, individually, assert eleven other claims. The expense of discovery would be great, considering the size of the class. The likely duration of further litigation would also be great. Settlement at this early stage in the proceedings saves substantial attorneys' fees, costs and expenses for all parties.

### Risk of Maintaining Class Action Status Throughout the Trial

The parties submit no argument or evidence on this factor. This Court has no opinion of whether this factor supports preliminary approval. Accordingly, this factor is neutral.

### Extent of discovery completed and the stage of the proceedings

Based on the extent of discovery and the stage of proceedings, this Court finds that the proposed settlement agreement is fair, adequate and reasonable for the following reasons:

First, the Settlement Fund, which shall result in a net award of approximately one-third of the Class Members' claimed damages under plaintiffs' theory of the case, is reasonable and fair. The parties agree that this is a good faith approximation, given appropriate adjustments for the class size, actual interest rates, strength of the case, and related costs of litigation.

Second, while the parties have not engaged in formal discovery, discovery establishes that settlement is in the best interest of the parties. Relevant documents were exchanged and reviewed. Defendants were deposed. Class Members were interviewed. Thus, the parties' interests, likelihood of success, and estimation of damages is informed.

Third, the Court finds no evidence that the settlement was the product of anything other than arm's length negotiations. All parties conducted investigation and discovery. The parties participated in a one-day settlement conference with United States Magistrate Judge Michael J. Seng, which demonstrates that the parties' engaged in settlement negotiations independently. Accordingly, there is no evidence of any collusive negotiations between the parties.

### Experience and views of counsel

Class counsel submit a declaration to support this motion for approval of this class action

settlement. Class counsel are experienced attorneys. Class counsel support this settlement agreement for a number of reasons, including the risks of continuing the litigation. This factor supports approval of the settlement agreement.

### Reaction of the class members to the proposed settlement

All parties have agreed, either as named plaintiffs or as opt-in consenters, to the terms of this agreement. No parties objected.

### Other Factors To Consider

#### *Attorneys Fees*

In class actions, the district court has broad discretion in assessing the reasonableness of attorneys' fees. *In re FPI/Agretech Securities Liti.*, 105 F.3d 469, 472 (9th Cir. 1997). This discretion permits the court to award fees based on either the Lodestar calculation or common fund method. *Id.*; *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 105 F.3d 602, 607 (9th Cir. 1997). In using either method of attorneys' fees calculation, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields anunreasonable result, can be an abuse of discretion."*Id*.

Class counsel request attorneys' fees in an amount of $420,000. This amount includes actual costs and fees association with past and future claims administration. The parties ask this Court to apply the Lodestar method to award the attorneys fees rather than the common fund method. As set forth above, this Court has discretion to apply either the Lodestar method or common fund method. The "choice between lodestar and percentage calculation depends on the circumstances[.]" *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Either "method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Although 25% is the benchmark in common fund calculations, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers*, 904 F.2d at 1311. The amount of attorneys fees sought equals 45% of the settlement fund. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with

25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

This Court filed a notice to the parties that it was not included to approve the stipulated amount of attorneys' fees and requested supplemental briefing. In response, Plaintiffs filed a supplemental memorandum brief, declarations, and exhibits, including time records. Having considered the submitted arguments and exhibits, this Court approves the parties' stipulated attorneys' fees as reasonable, fair, and adequate. This Court considers that Plaintiffs' counsel also acted as claims administrator, and that the fees include costs of administration. This Court further considers the risk of this action and the success of the merits. Based on the absence of opposition, and Plaintiffs' well-documented hours worked in this action, this Court approved the attorneys' fees in the total amount of $425,000.00.

## CONCLUSION and ORDER

For the foregoing reasons, this Court ORDERS as follows:

1. The parties' proposed settlement agreement ("Settlement Agreement") is APPROVED, as it meets the criteria for settlement approval. In defining Settlement Agreement, this Court refers to and incorporates the settlement agreement and preliminary injunction that are on this Court's docket, Doc. 114-1 and 114-2, as modified by this Court's November 15, 2011 hearing and this Order. The Settlement Agreement falls within the range of possible approval as fair, adequate, and reasonable, and appears to be the product of arm's-length and informed negotiations.

2. The Settlement Sum of $490,000 is fair and reasonable to pay to the eighty-two (82) workers who are eligible as named plaintiffs and opt-in consenter class members, when balanced against the risks inherent in further litigation relating to liability and damages issues.

3. Under the terms of the Settlement Agreement, Defendants shall pay to the Settlement Fund of $490,000, on or before the Effective Date of Settlement. The amount of individual payment to the Named Plaintiffs and Opt-in Consenters will be determined by the Settlement Administrator based on the Settlement Formula.

4. The request for Class Counsel's attorneys' fees is APPROVED in the amount of $425,000 total, which includes actual costs and costs for past and future administration of the

settlement. This amount is reasonable. Defendant is to pay the attorneys' fees and costs settlement within 90 days after the Effective Date, after payment to the workers has been made.

5. Under the terms of the Settlement Agreement, Defendants shall be bound by a stipulated injunction. The Injunction shall remain in place for three year after the Effective Date of Settlement.

6. Absent an appeal, the parties and the Settlement Administrator will adhere to the following dates and deadlines:

   A. Within 30 days after "Effective Date," Settlement Administrator to mail individual settlement checks to Plaintiff; and

   B. Within 90 days after "Effective Date," Settlement Administrator to pay Class Counsel fees and costs.

7. The Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement.

8. Nothing in this Order shall preclude any action to enforce the parties' obligations under the Settlement or under this Order.

9. The clerk of court is directed to enter judgment in this action.

IT IS SO ORDERED.

**Dated:   November 22, 2011**                     **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE